

NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

*[Signature]*

**Signed April 21, 2009**                                                              **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| **HERITAGE MEDIA GROUP** | § § | Case No. 06-32591 HDH-7 |
| Debtor. | § | |

---

| | | |
|---|---|---|
| **HERITAGE NETWORKS, LLC;** **HERITAGE 215 ENTERTAINMENT II, LLC; HERITAGE 215 ENTERTAINMENT III, LLC; HERITAGE 215 ENTERTAINMENT, LLC;** and **HERITAGE-BARUCH TELEVISION DISTRIBUTION, LLC** | § § § § § § § § § | |
| Plaintiffs/Counter-Defendants, | § § | |
| vs. | § § | Adversary Proceeding No. 04-3387 |
| **STONE CANYON ENTERTAINMENT, LLC** | § § § § | |
| Defendant/Counter & Third Party Plaintiff, | § § § | |
| vs. | § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW - Page 1**

| | §|
|---|---|
|**ALTO-MARC COMMUNICATIONS OF**|§|
|**FLORIDA, INC.; FRANK MERCADO**|§|
|**VALDEZ; KEVIN S. WILEY, SR.;**|§|
|**COMER J. COTTRELL;**|§|
| |§|
|   **Third-Party Defendants.**|§|

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court has jurisdiction over this adversary proceeding pursuant to the provisions of 28 U.S.C. §§1334 and 157. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). The Court adopts the stipulated facts in the parties' Joint Pre-Trial Order, filed in this proceeding on January 16, 2009. In addition, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052:

### Findings of Fact

1.  As of December 15, 2002 Bradford Schlei ("Schlei") entered into an executive producer agreement with Heritage Networks, LLC ("Heritage") for services associated with the production of Weekend Vibe.

2.  The television and motion picture industry recognize a "pay or play" contract as a standard provision whereby the principal can engage the services of an agent and pay him or her to use the services of the artist or pay not to use the services. *See, Four Point Entertainment, Inc. v. New World Entertainment, Ltd.*, 60 Cal. App. 4th 79, 81 (Cal. App. 2 Dist., 1997) (*citing, Trans-World Intern. v. Smith-Hemion Productions*, 972 F.Supp. 1275, 1281 (C.D. Cal. 1997)).

According to testimony at trial, these types of contracts are typical for the entertainment industry due to the time commitment involved in television and film production.

3. Schlei and Heritage amended the executive producer agreement dated December 22, 2002, to provide an increased compensation rate of $165,000.

4. As of February 8, 2003, Schlei and Heritage entered into an executive producer agreement for services associated with the production of Livin Large.

5. As of March 3, 2003, Heritage, Heritage 215 Entertainment, LLC, Heritage 215 Entertainment II, LLC, Heritage 215 Entertainment III, LLC, and Heritage-Baruch Television, LLC; Stone Canyon Entertainment, LLC ("Stone Canyon"); and Comerica Bank entered into the Loan Agreement.

6. Heritage executed promissory notes totaling the amount of $610,000, which consisted of three notes: Note One in the amount of $375,000, which was executed on or about March 24, 2004; Note Two which was executed on or about June 15, 2004 in the amount of $105,000; and Note Three which was executed on or about August 30, 2004 in the amount of $130,000. The notes appear to be fairly standard promissory notes.

7. Heritage requested advances through the issuance of three Borrowing Certificates which were executed on or about March, 24, 2004, June 15, 2004, and August 30, 2004.

8. Alto-Marc Communications of Florida, Inc. executed and delivered a written Weekend Vibe Principal Party Corporate Guaranty in favor of Stone Canyon.

9. Frank Mercado Valdez executed and delivered a written Weekend Vibe Principal Party Personal Guaranty in favor of Stone Canyon.

10. Kevin S. Wiley, Sr. ("Wiley, Sr.") executed and delivered a written Weekend Vibe Principal Party Personal Guaranty in favor of Stone Canyon.

11. Alfred Baker ("Baker") executed and delivered a written Weekend Vibe Principal Party Personal Guaranty in favor of Stone Canyon.

12. Comer J. Cottrell ("Cottrell") executed and delivered a written Weekend Vibe Principal Party Personal Guaranty in favor of Stone Canyon.

13. Wiley, Sr. is a respected lawyer, and is knowledgeable about business matters and usury laws.

14. Cottrell is a very respected Dallas businessman, experienced in complex business arrangements and investments.

15. Stone Canyon has received one payment in the amount of $400,000 as a payment from Heritage, under its plan, for the amounts due and owing. Heritage did not perform all of its plan obligations owed to Stone Canyon. Third Party Defendants have not shown that the payment made by Heritage fully satisfied the obligations they guaranteed.

16. Stone Canyon has made written demand for payment, but payment has not been forth coming.

17. The production services agreements were dated to reflect the date of the agreement between the parties. Apparently, in the entertainment business, the parties to such contracts are not particularly careful about obtaining written agreements before work begins.

18. Schlei performed some services in the production of the Weekend Vibe.

19. Schlei performed some services in the production of Livin Large.

20. After crediting the $400,000.00 payment from Heritage received by SCE in January 2006, there remained, at the time of trial, $628,595.38 due and owing in principal and accrued interest. Interest continues to accrue.

## Conclusions of Law

1. The Loan Agreement and Promissory Notes do not violate California usury laws.

2. The Promissory Notes create and establish obligations from Heritage to Stone Canyon.

3. The Guarantees are enforceable and establish obligations from Alto-Marc Communications of Florida, Inc. ("Alto-Marc"), Frank Mercado Valdez ("Valdez"), Wiley, Sr., Baker, and Cottrell to Stone Canyon.

## Usury

4. Article XV § 1(2) of the California Constitution prohibits usury, which is a loan or forbearance of money, goods or things at a rate of interest that exceeds the maximum rate of 10% per annum.

5. Under California law, the four essential elements of usury include a loan or forbearance, interest exceeding the statutory minimum, absolute repay-ability of loan and interest, and a lender with a willful intent to enter into a usurious transaction. *Jones v. Wells Fargo Bank* (2003) 5 Cal.Rptr. 3d 835, 112 Cal. App. 4th 1527; *Sheehy v. Franchise Tax Bd.* (2000) 100 Cal.Rptr. 2d 760, 84 Cal. App. 4th 290, rehearing denied, review denied.

6. Borrower (in this case, the Third Party Defendants) bears the burden of proving the essential elements of a usurious transaction. *De Guere v. Universal City Studios, Inc.* (1997) 65 Cal.Rptr. 2d 438, 56 Cal. App. 4th 482.

7. The intent of the parties is relevant in determining the true purpose of the transaction in question because the trier of fact must look to the substance of the transaction rather than to its form. *WRI Opportunity Loans II, LLC v. Cooper,* (2007) 65 Cal.Rptr. 3d 205, 154 Cal. App. 4th 525.

8. The trier of fact must determine whether the intent of the contracting parties was that disclosed by the form adopted, or whether such form was a mere sham and subterfuge to cover up a usurious transaction. *WRI Opportunity Loans II, LLC v. Cooper,* (2007) 65 Cal.Rptr. 3d 205, 154 Cal. App. 4th 525.

9. Third Party Defendants have not produced sufficient, credible evidence to show that Stone Canyon intended to enter into a usurious transaction, and that the loan transaction violates the usury provisions of Article XV of the California Constitution.

10. Third Party Defendants have not produced sufficient, credible evidence that Stone Canyon engaged in a willful and malicious intent to fraudulently violate the usury provisions of Article XV of the California Constitution.

11. California Corporations Code Section 25118 paragraphs (a) and (b) provide that evidences of indebtedness and persons and companies who purchase or hold them, are exempt from the usury prohibition in two instances:

    (1) if the company issuing the debt (or a guarantor affiliated with the issuer) has at least $2 million in total assets, according to its most recent financial statements; or

    (2) if the debt is at least $300,000.00 at the time of issuance, or is issued pursuant to a written commitment or line of credit for at least $300,000.00.

12. In addition pursuant to California Corporations Code Section 25118(f), for either exemption to apply, one of the following must apply: (1) the lender and the issuer or guarantor

of the indebtedness (or any of their officer, directors or controlling persons) must have preexisting personal or business relationship; or, (2) the lender and the issuer, or the lender and the guarantor, by virtue of their own business and financial experience or that of their professional advisors, could reasonably be assumed to have the capacity to protect their own interests in connection with the transaction.

13. In the present case, both requirements have been met by a preponderance of the evidence. The preponderance of the evidence suggests that the business relationship predated the loan agreement and is referred to therein. Alternatively, the preponderance of the evidence established that Third Party Defendants, by virtue of their own business and financial experience or that of their professional advisors, could reasonably be assumed to have the capacity to protect their own interests in connection with the transaction.

### Trustee's Claims

14. For the same reasons expressed above, the Trustee's claims for usury fail.

15. Alternatively, the Trustee's claims were satisfied in the confirmation process and order in the underlying bankruptcy case, and Trustee is now precluded from asserting them.

### Attorneys Fees

16. Counsel for Stone Canyon shall submit an application for approval of attorney fees within ten days and serve the other parties, who will have ten days to respond. The Court reserves the right to rule on the application and response, if any, or to set the matter for hearing.

17. After attorney fees have been determined, counsel for Stone Canyon shall promptly submit a judgment consistent with these findings of fact and conclusions of law.

###END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW###